IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:12-CR-91 |
|---|---|---|
| v. | : | (Chief Judge Conner) |
| FREMO SANTANA | : | |

# MEMORANDUM

On December 8, 2014, defendant Fremo Santana ("Santana") entered a plea (Doc. 1072) of guilty to a one-count information (Doc. 1067) charging him with conspiracy to distribute and possess with intent to distribute cocaine hydrochloride and heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), and (b)(1)(A)(ii). Thereafter, in accordance with the court's order (Doc. 1073), the United States Probation Office prepared a presentence report ("PSR"). (Doc. 1240). On June 25, 2015, the court held an evidentiary hearing to address Santana's objections to the PSR. (See Doc. 1282). Sentencing in this matter is scheduled for August 26, 2015. (See Doc. 1298). This memorandum will address Santana's objection to the drug quantity calculation, pursuant to United States Sentencing Guidelines § 2D1.1. The court will reserve ruling on the remaining objections until the time of sentencing.

## I. Background[1]

Beginning prior to 2009 and continuing through March of 2012, Santana was involved in a drug trafficking conspiracy based out of Boston, Massachusetts which

---

[1] The court's recitation of the facts is taken from the presentence report (Doc. 1240) and the testimony provided at the evidentiary hearing held on June 25, 2015. (See Doc. 1282).

supplied significant quantities of cocaine and heroin to distributors in central Pennsylvania. (Doc. 1240 ¶ 8). On April 11, 2012, a federal grand jury returned an indictment (Doc. 1) charging Santana and eighteen co-defendants with various drug-related offenses arising from the conspiracy. On December 8, 2014, pursuant to a plea agreement, Santana pled guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine hydrochloride and 1 kilogram or more of heroin. (Doc. 1072); 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (b)(1)(A)(ii).

The PSR recommends that Santana be held responsible for 450 kilograms or more of cocaine and 60 kilograms or more of heroin, pursuant to § 2D1.1 of the United States Sentencing Guidelines ("Guidelines"). (Doc. 1240 ¶ 25). Santana objects to this calculation, positing that the provable drug quantity does not exceed the amount to which he pled guilty. (Doc. 1289 at 10). The United States Probation Office stands by its recommendation, explaining as follows:

> Evidence was obtained during this investigation through the use of confidential informants, controlled buys, surveillance by law enforcement, and seizures of controlled substances. The investigation revealed that Santana was a major source of supply of cocaine and heroin which he obtained in multi-kilogram quantities from Mexican sources. Additionally, it was learned that Santana sent multiple kilogram shipments of cocaine from Boston, Massachusetts to Harrisburg, Pennsylvania, on a weekly basis for a period of approximately 132 weeks. Santana supplied at least seven Harrisburg-based drug traffickers with cocaine and/or heroin . . . . It is the Government's position that the readily provable quantity of cocaine hydrochloride attributable to [Santana] is at least 450 kilograms, and he is responsible for the 60 kilograms of heroin he sold to Angel Cruz. It is noted that Santana is not being held accountable for any crack cocaine distributed by the

>organization, therefore, he could have potentially been held responsible for an even larger quantity of drugs.

(Doc. 1241 at 1).

On June 25, 2015, the court held an evidentiary hearing to address Santana's objections to the PSR. (See Doc. 1282). The government called Drug Enforcement Agency ("DEA") Special Agent Eric Shuffelbottom ("Agent Shuffelbottom"), who outlined the government's investigation of the drug trafficking conspiracy and relayed numerous drug quantity estimates as proffered by Santana's co-defendants during DEA interviews. (Id.) Defense counsel cross-examined Agent Shuffelbottom and introduced several exhibits, including transcripts of prior testimony given by Santana's co-defendants at a separate proceeding. (See Doc. 1279, Exs. 1, 4).

At the conclusion of the hearing, the court directed the parties to file supplemental memoranda addressing their respective proposed drug quantities. (Doc. 1282 at 77-78; see Doc. 1280). Therein, the government asserts that it has proven by a preponderance of the evidence that Santana was responsible for trafficking 450 kilograms or more of cocaine and 60 kilograms or more of heroin. (Doc. 1293 at 9). Conversely, Santana argues that the government's testimonial evidence is unreliable and maintains that a culpable drug quantity of 5 kilograms of cocaine and 1 kilogram of heroin is appropriate. (Doc. 1289 at 10). This issue is ripe for disposition.

## II. Legal Standard

In sentencing, a court must engage in a three-step process pursuant to Gall v. United States, 522 U.S. 38 (2007). First, it must calculate the advisory Guidelines

range.  United States v. Wright, 642 F.3d 148, 152 (3d Cir. 2011).  Second, the court must formally rule on any motions for departure and state the impact, if any, of such ruling on the Guidelines calculation.  Id.  Third, the court is required to exercise its discretion and consider the sentencing factors set forth in 18 U.S.C. § 3553(a), which may vary from the advisory Guidelines range.  Id.

In the majority of cases involving drug-related offenses, a sentencing court must rely on the quantity of drugs involved in the offense to calculate the defendant's sentencing range.  U.S.S.G. § 2D1.1(a)(5); United States v. Collado, 975 F.2d 985, 990 (3d Cir. 1992).  The Guidelines instruct that when "there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance."  U.S.S.G. § 2D1.1 cmt. n.2.[2]  It is the government's burden to prove such culpable drug amounts by a preponderance of the evidence.  United States v. Gibbs, 190 F.3d 188, 203 (3d Cir. 1999); United States v. Paulino, 996 F.2d 1541, 1545 (3d Cir. 1993); United States v. Surine, No. 4:CR-07-304, 2009 WL 2230933, at *6 (M.D. Pa. July 24, 2009), aff'd, 374 F. App'x 164 (3d Cir. 2010); see U.S.S.G. § 6A1.3.  The Third Circuit has cautioned that the Guidelines' "recognition of the need to estimate . . . is not a license to calculate drug amounts by guesswork."  Paulino, 996 F.2d at 1545; see also Collado, 975 F.2d at 998 ("Given the dramatic effect such estimates have on the defendant's sentence, the sentencing court must carefully review the government's submissions

---

[2] The Guidelines application notes are authoritative and are to be accorded "controlling weight" unless they are plainly erroneous or inconsistent with the Constitution, a federal statute, or the Guidelines.  United States v. Lianidis, 599 F.3d 273, 278 (3d Cir. 2010) (quoting Stinson v. United States, 508 U.S. 36, 45 (1993)).

to ensure that its estimates are proven by a preponderance of the evidence."). Viewed thusly, a court must rely exclusively on evidence which manifests "a sufficient indicia of reliability to support its probable accuracy." United States v. Freeman, 763 F.3d 322, 337 (3d Cir. 2014) (quoting United States v. Brothers, 75 F.3d 845, 848 (3d Cir. 1996)).

### III. Discussion

The government asserts that "the testimony offered in the evidentiary hearing and contained in the PSR demonstrate at least by a preponderance of the evidence" that Santana is responsible for 450 kilograms or more of cocaine and 60 kilograms or more of heroin. (Doc. 1293 at 9). Specifically, the government avers that "the weights contained in the PSR for which the defendant is culpable were provided by influential members of the conspiracy and confirmed during the investigation of the remaining co-conspirators." (Id. at 6). However, the PSR's factual recitation of the offense conduct—presumably the section to which the government refers—merely (1) recounts a miscellany of drug amounts seized throughout the investigation, and (2) advances various and sundry drug quantity estimates with minimal context. (Doc. 1240 ¶¶ 10-20). Certain estimates appear to have been provided by co-conspirators while others lack attribution entirely. (Id.) Further, the PSR offers no insight into its methodology for calculating the suggested drug quantity, noting only that the government deems the amounts to be "readily provable." (Id. ¶ 20). Consequently, the court will not rely on the estimations set forth in the PSR. See Freeman, 763 F.3d at 337 (requiring that evidence used to establish drug quantity at sentencing "have a sufficient indicia of

5

reliability to support its probable accuracy"); Paulino, 996 F.2d at 1545 (necessitating careful scrutiny of the government's estimates of culpable drug amount).

At the evidentiary hearing, Agent Shuffelbottom testified concerning precise drug amounts seized during traffic stops[3] and drug quantity estimates elicited from investigatory interviews with multiple of Santana's co-defendants.[4] (See Doc. 1282). He reported that Zenaida Arroyo ("Arroyo"), Santana's wife, indicated that she and other members of the conspiracy transported 5 to 7 kilograms of cocaine and 500 to 1000 grams of heroin from Boston to Harrisburg two to three times per month. (Id. at 26). Attempting to discredit Arroyo's hearsay representations, defense counsel introduced into evidence a transcript of Arroyo's testimony from the trial of a co-defendant. (Id. at 62). Therein, Arroyo represented that she never witnessed more than 1 kilogram of cocaine at one time. (See Doc. 1279, Ex. 4).

Agent Shuffelbottom further testified that he interviewed co-defendant Angel Cruz ("Cruz") on multiple occasions following his arrest in March of 2012. (Doc. 1282 at 56). Cruz, a large-scale distributor based out of Harrisburg, initially indicated that he received 3 to 4 kilograms of cocaine from Santana every three weeks. (Id. at 20, 54). In later interviews with Agent Shuffelbottom, Cruz increased

---

[3] Specifically, Agent Shuffelbottom testified that the DEA seized 130 to 150 grams of heroin from Angel Cruz; 100 to 150 grams of heroin from Eduardo Martinez and Ramon Serrano-Aponte; and approximately 600 grams of heroin and 61 grams of cocaine from Luis Lopez-Melendez. (Doc. 1282 at 12-13, 15).

[4] It is uncontested that the court may attribute to Santana the drug amounts possessed and distributed by his co-defendants. See Collado, 975 F.2d at 995-98 (explaining accomplice attribution in the context of drug quantity calculation).

his estimate, representing that over the course of three years, he obtained 4 kilograms of cocaine at a rate of two to three times per month. (Id. at 26). According to Agent Shuffelbottom:

> Typically [Cruz] said it was pretty steady at [4] kilograms most of the time. He said prior to us arresting him they had spotted . . . some of our surveillance equipment and that he had indicated to the defendant that he wanted to slow down a little bit because he was worried that he was going to get caught. So he actually said the last couple of months he was getting maybe [1] or [2] kilograms at a time . . . . He indicated it started three years before we arrested him. So it would have been three years prior to that, March 2012.

(Id. at 26-27). Cruz also admitted to periodically receiving 100 to 150 grams of heroin. (Id. at 27). He represented that Santana's drug couriers transported and distributed a total of 500 to 1000 grams of heroin on each trip from Boston to Harrisburg. (Id. at 28). Agent Shuffelbottom found Cruz's later estimates to be reliable, explaining as follows:

> My experience is typically when you first interview somebody they minimize their involvement because, like any other interview process, it takes awhile to build that trust. So of course when you first arrest somebody they're thinking . . . they don't want to be tricked into something or they don't want to be tricked into maybe providing you all the information that might be used against them later or that you're not being forthcoming with them. So typically in first interviews we rarely get all the information. Typically that develops during time, . . . after several interviews.

(Id. at 65).

Endeavoring to discredit Cruz's hearsay statements, defense counsel introduced evidence of prior inconsistent testimony given by Cruz at a

7

co-defendant's trial. (Id. at 55). Therein, Cruz estimated that he regularly received 125 grams to 1 kilogram of cocaine and 50 to 100 grams of heroin from Santana. (See Doc. 1279, Ex. 4). Cruz did not opine as to the relevant time period or the frequency of delivery. (See id.)

Agent Shuffelbottom also testified regarding drug quantity estimates tendered by other participants in the conspiracy. (Doc. 1282 at 29-36). Each such estimate included a specific drug weight approximation but lacked certain elucidatory facts, such as relevant time period or frequency of transfer therein.[5] For example, Boston-based courier Eduardo Martinez disclosed that he typically delivered 50 grams of cocaine per week to five regular customers and that he distributed 30 to 50 grams of heroin on occasion. (Id. at 36). However, Agent Shuffelbottom was unclear as to the duration of this arrangement. (Id.)

A court may calculate drug quantity by relying on co-defendant testimony regarding the weight of drugs transported as well as the "average amounts sold [at regular intervals] . . . multiplied by length of time sold." Gibbs, 190 F.3d at 204; see United States v. Figueroa, No. 08-000745-01, 2011 WL 2790465, at *11 (E.D. Pa. July 15, 2011) aff'd sub nom. United States v. Fletcher, 499 F. App'x 228 (3d Cir. 2012). Hearsay statements to this effect may serve as the foundation for the court's

---

[5] Agent Shuffelbottom testified to the following estimates: (1) Iduino Vasquez received 200 to 500 grams of cocaine and 100 grams of heroin per delivery for a minimum of thirteen months, (id. at 29); (2) Harry Ortiz couriered 5 to 7 kilograms of cocaine two to three times per month, (id. at 30); (3) Eddie Rodriguez-Melendez obtained 1 kilogram of cocaine and 250 to 500 grams of heroin per delivery, (id. at 32); (4) Freddie Lopez-Ismurria received 1 kilogram of cocaine and approximately 500 grams of heroin per delivery, (id. at 34-45); and (5) Eduardo Martinez couriered 50 grams of cocaine to five different customers per week and 30 to 50 grams of heroin on occasion, (id. at 35-56).

calculation, provided they are sufficiently reliable.  See Paulino, 996 F.2d at 1548; Ristagno v. United States, 32 F. Supp. 2d 184, 191 (M.D. Pa.), aff'd, 185 F.3d 863 (3d Cir. 1999).  Further, a sentencing court "may credit hearsay evidence over sworn testimony, especially where there is other evidence to corroborate the inconsistent hearsay statement."  Miele, 989 F.2d at 664; see also Freeman, 763 F.3d at 337 ("Indicia of reliability may come from, *inter alia,* the provision of facts and details . . . [or] corroboration by or consistency with other evidence . . . .").

Upon careful consideration of the government's presentation in the matter *sub judice*, the court finds Agent Shuffelbottom's testimony to be credible.  The court further finds that Cruz's hearsay statements, as related by Agent Shuffelbottom, are sufficiently credible to merit the court's reliance in calculating the drug weight attributable to Santana.  In reaching this conclusion, the court is persuaded by the following: (1) Agent Shuffelbottom's opinion as to the veracity of Cruz's representations, (Doc. 1282 at 26-27, 65); (2) the corroborative drug weight assessments provided by other co-defendants, as introduced through Agent Shuffelbottom, (id. at 29-36); (3) Agent Shuffelbottom's testimony concerning the amount of drugs seized during traffic stops,[6] (id. at 12-13, 15); and (4) the specificity of Cruz's assertions, (id. at 26-28).[7]  See Freeman, 763 F.3d at 337.  Cruz renders

---

[6] To avoid double counting, the court will not include these amounts in its drug quantity calculation.  See Gibbs, 190 F.3d at 220.

[7] Given the ample supporting evidence, the court declines to credit Cruz's prior inconsistent testimony.  (Doc. 1279, Ex. 4); see United States v. Parker, 254 F. App'x 906, 909-10 (3d Cir. 2007) (nonprecedential) ("The existence of inconsistency alone does not deprive a hearsay statement of sufficient indicia of reliability . . . ." (citing Miele, 989 F.2d at 664)).

precise approximations of drug quantity (4 kilograms of cocaine and 500 to 1000 grams of heroin, reduced significantly during the last two months); transport frequency (two to three deliveries per month); and duration (three years). (Doc. 1282 at 26-28). In view of the foregoing, the court concludes that Cruz's representations bear significant indicia of reliability to establish their probable accuracy. See Freeman, 763 F.3d at 337; Paulino, 996 F.2d at 1548.

Contrarily, the additional hearsay statements—those made by other co-defendants and recited by Agent Shuffelbottom—lack the contextual clarity and the essential facts which would allow the court to soundly extrapolate Santana's culpable drug amount therefrom. See Paulino, 996 F.2d at 1546-48; Collado, 975 F.2d at 998. Thus, the court holds that there is no basis for incorporating the representations proffered therein into the instant calculation. See Freeman, 763 F.3d at 337 (explaining that sufficient reliability may be established through factual detail or opportunity for cross-examination). Instead, the court finds these estimates to be merely corroborative of the drug amounts tendered by Cruz.

Based upon its review of the evidence of record, the court holds that the government has satisfied its burden of proof with respect to Cruz's drug quantity estimates introduced through Agent Shuffelbottom's testimony. The court will calculate the culpable drug quantity by surmising that Santana transported 4 kilograms of cocaine and 500 grams of heroin two times per month for thirty-four months, and 1 kilogram of cocaine and 100 grams of heroin once a month for two months. These numbers are conservatively derived from the low end of Cruz's

estimation range. (Doc. 1282 at 26-27, 65). Accordingly, the court concludes that the government has shown by a preponderance of the evidence that Santana is responsible for 276 kilograms of cocaine and 34.2 kilograms of heroin.

## IV.    Conclusion

For the foregoing reasons, the court finds that the drug quantity attributable to Santana is 276 kilograms of cocaine and 34.2 kilograms of heroin. See U.S.S.G. § 2D1.1. At sentencing, the court will resolve the remaining objections, calculate Santana's final Guidelines range, rule on any motions for departure, and consider the 18 U.S.C. § 3553(a) factors on the record. An appropriate order follows.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      August 18, 2015