# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:12-CR-91 |
|---|---|---|
| v. | : | (Chief Judge Conner) |
| FREMO SANTANA, | : | |
| Defendant | : | |

## MEMORANDUM

The court sentenced defendant Fremo Santana ("Santana") to 324 months' imprisonment after he pled guilty to conspiracy to distribute and possess with intent to distribute cocaine and heroin. Santana moves *pro se* to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1355). He asserts that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. We will deny Santana's Section 2255 motion.

## I. Factual Background & Procedural History[1]

From 2009 to 2012, Santana was involved in a drug trafficking conspiracy based out of Boston, Massachusetts that supplied significant quantities of cocaine and heroin to distributors in central Pennsylvania. (Doc. 1240 ¶ 8; Plea Hr'g Tr. 15:17-21:18). In April 2012, a federal grand jury returned an indictment charging Santana and 18 codefendants with various drug-related offenses arising from the conspiracy. (Doc. 1). Santana was named in five of the seven counts in the

---

[1] The following narrative summarizes the factual and procedural background of this case as derived from the record. Citations to the record include the transcript of the change of plea hearing convened on December 8, 2014 ("Plea Hr'g Tr.") and the August 25, 2016 sentencing hearing ("Sent. Tr.").

indictment. (Id.) John A. Abom, Esquire ("Attorney Abom") was initially appointed to represent Santana. (Doc. 147). Santana subsequently hired private counsel and Attorney Abom withdrew. (Docs. 394, 427-28). In September 2014, Santana moved to appoint new counsel and Attorney Abom was re-appointed. (Docs. 950, 952).

Trial was scheduled to begin on December 8, 2014. (Doc. 1057). That day, Santana and the government reached a last-minute agreement and Santana pled guilty to a superseding felony information. (Docs. 1067, 1069, 1072). The information charged Santana with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine hydrochloride and one kilogram or more of heroin in contravention of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), and (b)(1)(A)(ii), all in violation of 21 U.S.C. § 846. (Doc. 1067).

Probation prepared a presentence report ("PSR") recommending that Santana be held responsible for at least 450 kilograms of cocaine and at least 60 kilograms of heroin, implicating a base offense level of 38 under the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G."). (Doc. 1240 ¶ 25). The PSR also recommended a two-level enhancement for maintaining a "stash house," see U.S.S.G. § 2D1.1(b)(12), and a four-level enhancement for being an organizer or leader in a criminal activity involving five or more participants, see id. § 3B1.1(a). (Doc. 1240 ¶¶ 26, 28). With a two-level decrease for acceptance of responsibility, a resulting total offense level of 42, and a criminal history category of II, Santana's Guidelines imprisonment range under the PSR was 360 months to life. (Id. ¶¶ 32, 33, 37, 56).

Santana, through Attorney Abom, objected to the drug-weight calculations in the PSR, as well as to the "stash house" and "organizer or leader" enhancements. (Doc. 1241; Doc. 1289 at 4-10). We held an evidentiary hearing to address Santana's objections. (See generally Doc. 1282). Following the hearing, we issued a detailed memorandum addressing the drug-weight calculations, finding that Santana was responsible for 276 kilograms of cocaine and 34.2 kilograms of heroin. United States v. Santana, No. 1:12-CR-91, 2015 WL 4926433, at *5-6 (M.D. Pa. Aug. 18, 2015). We overruled Santana's remaining objections at the sentencing hearing. (Sent. Tr. 12:10-18, 17:11-15). Santana's resulting total offense level of 40 coupled with his criminal history category of II produced a Guidelines range of 324 to 405 months' imprisonment. (Id. at 17:18-18:2). The court sentenced Santana to 324 months' incarceration—the bottom end of his Guidelines range. (Id. at 27:13-20).

Santana appealed, arguing, *inter alia*, that the drug-weight and sentencing-enhancement determinations were not supported by a preponderance of the evidence and that his 324-month sentence was substantively unreasonable. United States v. Santana, 654 F. App'x 62, 63 (3d Cir. 2016) (nonprecedential). The Third Circuit Court of Appeals affirmed on both issues in an unpublished opinion. Id.

After the Supreme Court of the United States denied *certiorari*, see Santana v. United States, 137 S. Ct. 344 (2016) (mem), Santana timely filed the instant motion for relief under 28 U.S.C. § 2255. In his *pro se* Section 2255 motion, Santana raises two claims of ineffective assistance of counsel. (Doc. 1355 at 5; Doc. 1355-1 at 4-11). The motion is fully briefed and ripe for disposition.

## II. <u>Legal Standard</u>

Under Section 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." <u>Id.</u> § 2255(a); <u>see</u> <u>also</u> 28 U.S.C. § 2255 Rule 1(a). The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record." <u>United States v. Booth</u>, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." <u>United States v. Tolliver</u>, 800 F.3d 138, 141 (3d Cir. 2015) (quoting <u>Booth</u>, 432 F.3d at 546).

## III. <u>Discussion</u>

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. <u>See id.</u> at 687-88. The defendant bears the burden of proving both prongs. <u>See id.</u> at 687. Conclusory allegations are insufficient to entitle a defendant to relief under Section

4

2255. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90).

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. As applied to the plea-bargaining process, the defendant must show that "the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See Strickland, 466 U.S. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

Santana advances two theories in support of his request for Section 2255 relief. *First*, Santana argues that Attorney Abom was deficient for failing to object to hearsay testimony during sentencing, which violated Crawford v. Washington,

5

541 U.S. 36 (2004). *Second*, Santana contends that Attorney Abom was constitutionally ineffective during the plea-bargaining process for telling Santana that, under the plea agreement, he would be facing no more than 14 years' imprisonment when in fact he received a much higher sentence. We will address these claims *seriatim*.

### A. Failure to Object to Hearsay During Sentencing

Santana's ineffectiveness claim concerning counsel's failure to object to hearsay testimony is directly contradicted by the record. Attorney Abom filed a detailed brief in support of Santana's objection to the PSR's drug-weight calculations, specifically questioning the propriety of relying on hearsay to support the PSR's findings. (See Doc. 1289 at 2, 4-5). Moreover, during sentencing, Attorney Abom argued extensively against the admissibility and reliability of hearsay testimony introduced at the evidentiary hearing that supported the drug-weight findings and sentencing enhancements. (Sent. Tr. 6:13-7:20, 9:12-25, 10:11-11:5). The court ultimately overruled those objections, but they were lodged nonetheless. Because the record clearly demonstrates that Attorney Abom did in fact object to the admissibility and reliability of the hearsay evidence, his performance did not fall below an objective standard of reasonableness. We will deny Santana's first ineffectiveness claim.

### B. Ineffective Assistance During Plea-Bargaining Process

Santana's second claim asserts that Attorney Abom misinformed him about his sentencing exposure under the plea agreement, thereby altering the voluntary and knowing nature of his decision to plead guilty. Santana alleges that on the day

6

trial was to begin, Attorney Abom advised him to accept the government's latest offer, under which he would face no more than 14 years' imprisonment as opposed to a more severe sentence of 20 to 30 years if convicted at trial.[2] (Doc. 1355-1 at 5). But for this errant advice, Santana argues, he would not have pled guilty and would have taken his chances at trial. Santana maintains that, at the least, an evidentiary hearing regarding Attorney Abom's plea-bargain conduct is warranted.

The government counters that "there is no evidence counsel advised Santana that the maximum penalty he could receive was 14 years' imprisonment," and that in any event the change of plea hearing disabused Santana of any incorrect belief that his sentence under the plea agreement could not exceed 14 years. (Doc. 1361 at 10-11). We agree with the government's second argument. Even taking Santana's allegations about Attorney Abom's advice as true, Booth, 432 F.3d at 545, the instant plea agreement and guilty plea colloquy indisputably remedied any error alleged.

A criminal defendant must be provided with sufficient information to make a reasonably informed decision regarding whether to accept a plea offer or go to trial. United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015) (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013)). Potential sentencing exposure under a plea agreement versus standing trial is an "important factor" in the defendant's decisionmaking process. Id. Nevertheless, counsel is not required to provide "a detailed exegesis of the myriad arguably relevant nuances of the Guidelines." United States v. Day, 969

---

[2] In Santana's reply brief, he asserts that Attorney Abom cautioned him that a conviction at trial would likely result in a sentence of 80 years or more, rather than 20 to 30 years as alleged in his initial supporting brief. (See Doc. 1362 at 2).

7

F.2d 39, 43 (3d Cir. 1992). Due to the "vagaries and variables" of a particular defendant's offense and circumstances, counsel is not constitutionally ineffective for failing to give a reasonably precise "best guess" as to what the actual sentence will be. United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (quoting United States v. Mustafa, 238 F.3d 485, 492 n.5 (3d Cir. 2001)). Moreover, "defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion." Id.

Santana's plea agreement and guilty plea colloquy unequivocally demonstrate that Santana's decision to plead guilty was reasonably informed regardless of any allegedly inaccurate sentencing exposure information given by Attorney Abom. In the plea agreement, Santana was informed that the maximum penalty for the crime to which he would plead guilty was life imprisonment. (Doc. 1069 ¶ 1). The agreement also acknowledges a mandatory minimum of 10 years. (Id. ¶ 3). Santana was informed that the Guidelines would apply and that the court would determine the specific offense characteristics, applicability of enhancements, and the appropriate sentence. (Id. ¶ 11). Finally, the agreement clearly states that the court is not bound by the plea agreement or the parties' recommendations, and could "impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for up to life[.]" (Id. ¶ 19).

Santana's guilty plea colloquy is even more enlightening. We note that the government summarized the essential terms of the plea agreement on the record, reiterating, *inter alia*, the maximum penalty of life imprisonment and that the court

8

was not bound by the agreement and could impose any sentence up to the statutory maximum. (Plea Hr'g Tr. 8:3-25). When asked whether any promises or offers outside of the plea agreement were made by anyone—including counsel—to induce Santana to plead guilty, he responded "No." (Id. at 9:21-24). The court asked Santana whether he understood that no one could guarantee what sentence he would receive, and Santana answered affirmatively. (Id. at 10:5-7). Santana was further questioned about whether he understood that the terms of the plea agreement were only recommendations and that the court could reject those terms and "impose a sentence which is more severe than [Santana] may anticipate," to which he responded "Yes." (Id. at 10:14-19). The court also directly questioned Santana if he knew that the statutory maximum was life imprisonment, and he again replied "Yes." (Id. at 11:7-12). Santana was explicitly informed, and confirmed understanding, that although the government and his counsel could agree on facts and make recommendations and requests at sentencing, the court was not obligated to follow the parties' recommendations or accede to requests and the plea would still be binding. (Id. at 12:25-13:8). Finally, the court cautioned Santana that "[i]f your attorney or anyone else has estimated your guideline sentencing range at this time and I determine after I review the [PSR] that the guideline range is different from what has been estimated to you, you cannot withdraw your guilty plea." (Id. at 13:9-13). Santana expressed understanding to this instruction as well. (Id. at 13:14).

There is no need for an evidentiary hearing in this matter. Even assuming, *arguendo*, that Attorney Abom incorrectly advised Santana that his sentence under

9

the plea agreement would not exceed 14 years, the plea agreement and guilty plea colloquy cured that erroneous information. See Shedrick, 493 F.3d at 299-300; see also United States v. Fazio, 795 F.3d 421, 428 (3d Cir. 2015). The agreement and in-court colloquy clearly established Santana's "maximum potential exposure and the sentencing court's discretion." Shedrick, 493 F.3d at 299. Accordingly, Santana has failed to demonstrate prejudice under the second Strickland prong, see Fazio, 795 F.3d at 427, 429, and his ineffective-assistance-of-counsel claim regarding the plea-bargaining process will be denied.

## IV. Conclusion

We will deny Santana's motion (Doc. 1355) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. We will likewise deny a certificate of appealability, as Santana has failed to make the requisite "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: November 5, 2018